UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HILDA GONZALEZ GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:12-CV-274 |
| | § | |
| STARR COUNTY, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.  Factual and Procedural Background

Now before the Court is the Motion for Summary Judgment filed by Defendants Starr County, Texas ("the County") and Victor Canales, Jr., sued in his individual and official capacities.  (Dkt. No. 20).  On August 17, 2012, Plaintiff Hilda Gonzalez Garza filed this suit challenging Defendants' termination of her employment as an Assistant County Attorney.  (Dkt. No. 1).  Plaintiff's Complaint alleges that on July 18, 2012, after County Attorney Canales discovered Plaintiff's interest in running for a position on the Rio Grande City School Board, Canales warned Plaintiff that she would be running against members of his political "grupo," or team, and asked her to "think about it."  *Id.* at § 2.  On July 20, Plaintiff visited "local county elected officials" to advise them that she would be running for the School Board, and to seek their support.  *Id.*  That afternoon, Plaintiff received a letter that her employment had been terminated.  *Id.*  Plaintiff brings various causes of action against both Defendants under 42 U.S.C. § 1983 and the Texas Constitution, alleging that Defendants terminated her employment in retaliation for Plaintiff's exercise of her federal and state constitutional rights to freedom of speech and association, and in violation of her right to due process.  *Id.* at §§ 3, 4.  Plaintiff also

asserts claims against Defendants pursuant to 42 U.S.C. §§ 1983 and 1985(3) on the grounds that they conspired with others to violate her federal constitutional rights. *Id.* at §§ 3, 5.

Defendants now move for summary judgment on all of Plaintiff's claims. (Dkt. No. 20). Upon consideration of Defendants' Motion, Plaintiff's response (Dkt. No. 24), and the summary judgment evidence, in light of the relevant law, the Court finds that the Motion must be granted in part and denied in part for the following reasons.

## II. Summary Judgment Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory

allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

### III.   Overview of Summary Judgment Evidence

The summary judgment record consists of copies of Plaintiff's deposition transcript, Plaintiff's and Defendant Canales's respective affidavits, Plaintiff's termination letter and her ensuing letter to Canales, an article in *The Monitor* newspaper regarding this case, and the Defendant County's Personnel Policy Manual.  (Dkt. No. 20 at Exs. A-C; Dkt. No. 24 at Attachments 1-3).

Through her deposition and affidavit,[1] Plaintiff attests that she began working as an Assistant County Attorney for County Attorney Canales's office in 2008.  (Dkt. No. 20-3, Ex. A at pp. 26, 33; Dkt. No. 24-1 at ¶ 4).  Plaintiff worked primarily on Child Protective Services cases but would also assist Canales and the other Assistant County Attorney with the juvenile and criminal dockets.  (Dkt. No. 20-3, Ex. A at pp. 29-30, 33-34, 40; Dkt. No. 24-1 at ¶¶ 4-5; *see also* Dkt. No. 24-5, Ex. C).  At the time of Plaintiff's employment, Canales also served as the attorney for the Rio Grande City Consolidated Independent School District.  (Dkt. No. 20-3, Ex. A at p. 54; Dkt. No. 24-1 at ¶ 5).

On July 17, 2012, Plaintiff called the Rio Grande City School District office for information about the approaching School Board election and learned that four members of the Board would be up for re-election.  (Dkt. No. 20-3, Ex. A at pp. 34-36, 44; Dkt. No. 24-1 at ¶¶ 5-

---

[1] Plaintiff's affidavit, dated June 25, 2013, largely mirrors the allegations in her Complaint.  *Compare* (Dkt. No. 1 at § 2; Dkt. No. 24-1).

6). Plaintiff also learned that the first day to file for the election was that coming Saturday, July 21, but since the office would be closed on that day she would need to file on Monday. (Dkt. No. 20-3, Ex. A at pp. 36, 52; Dkt. No. 24-1 at ¶ 6).

On July 18, Canales called Plaintiff into his office to tell her that he had received some phone calls about Plaintiff wanting to run for a School Board position. (Dkt. No. 20-3, Ex. A at pp. 37, 43; Dkt. No. 24-1 at ¶ 7). Canales asked Plaintiff if she in fact intended to run. (Dkt. No. 20-3, Ex. A at p. 43). Plaintiff told him that she did, and that she wanted to run because her two children attended school in the District and she felt that she could contribute to the Board. (Dkt. No. 20-3, Ex. A at pp. 45-46; Dkt. No. 24-1 at ¶ 7). Canales told Plaintiff that she had "created a panic" and asked if she understood that she "was being seen as a contra…running against [Canales's] team or his group." (Dkt. No. 20-3, Ex. A at p. 45; Dkt. No. 24-1 at ¶¶ 7-9). Canales's "team" included the incumbents for the four open positions. (Dkt. No. 20-3, Ex. A at p. 53). Plaintiff responded that she was not going to run against Canales's team or under any "slate"; rather, she "just wanted to run for [herself]" and give voters a choice in the election. (Dkt. No. 20-3, Ex. A at pp. 45, 52-54; Dkt. No. 24-1 at ¶¶ 8-9). According to Plaintiff, she also told Canales that she was not going to leave any political or campaign materials in his office or "disrespect him in any way, shape or form." (Dkt. No. 20-3, Ex. A at p. 55). Canales did not mention any concerns with Plaintiff's work performance during this meeting. *Id.* at p. 108.

On July 20, Plaintiff visited "local county elected officials" to advise them that she would file her election paperwork on Monday, and to seek their support. (Dkt. No. 24-1 at ¶ 11). That afternoon, she received a letter from Canales that her employment had been terminated. (Dkt. No. 20-3, Ex. A at pp. 61, 104; Dkt. No. 24-1 at ¶ 11; Dkt. No. 24-2). The letter did not state a reason for her termination. *See* (Dkt. No. 24-2). In a letter to Canales dated July 25, Plaintiff

recounted their conversation about the School Board election and requested that Canales give her an explanation for why she had been fired. (Dkt. No. 20-3, Ex. A at pp. 62, 104-05; Dkt. No. 24-1 at ¶ 12; Dkt. No. 24-2). Plaintiff did not receive a response. (Dkt. No. 20-3, Ex. A at pp. 62, 105; Dkt. No. 24-1 at ¶ 12). Not long after, Plaintiff obtained a copy of her personnel file and claims that it contains no indication of any work performance issues or misconduct. (Dkt. No. 20-3, Ex. A at pp. 106-07; Dkt. No. 24-1 at ¶ 12).

Plaintiff admits that she was not prohibited from running and, in fact, ran for a position on the School Board. (Dkt. No. 20-3, Ex. A at pp. 66-67). During the campaign, on September 23, 2012, an article appeared in *The Monitor* newspaper describing Plaintiff's allegations in this lawsuit. (Dkt. No. 24-3). The article also represented that Canales had "said [that Plaintiff's] termination was because of poor performance and recent complaints he'd received about her and not politics." *Id.* According to Plaintiff, this was the first and only explanation she received for why she had been fired. (Dkt. No. 20-3, Ex. A at p. 106; Dkt. No. 24-1 at ¶ 12).

Canales's brief affidavit, dated May 31, 2013, states that he was disappointed in Plaintiff's work performance and that he "had intended to terminate her employment prior to her announcing her decision to run for a school board position." (Dkt. No. 24-5, Ex. C). According to Canales, Plaintiff's decision to run "had nothing to do with [his] decision to terminate her." *Id.*

## IV. Defendants' Motion for Summary Judgment

### A. Section 1983 Claims

To prevail on a claim for damages under § 1983, a plaintiff must show (1) a violation of a right secured by the U.S. Constitution and (2) that the deprivation of that right was committed by a person acting under color of state law. *See, e.g.*, *James v. Texas Collin Cnty.*, 535 F.3d 365,

373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). Defendants' Motion mostly targets the first element, arguing that Plaintiff has failed to produce evidence of a constitutional violation. (Dkt. No. 20). Defendants also argue that no evidence exists that an official policy or custom of the Defendant County served as the moving force behind any alleged constitutional violation, precluding Plaintiff's § 1983 claims against this Defendant. *Id.*

For the following reasons, the Court finds that the record contains evidence to raise genuine issues of material fact on Plaintiff's First Amendment retaliation claims against Defendant Canales in his individual capacity. As to Plaintiff's remaining, due process-based claims and her claims against the County, summary judgment must be granted.

**1.    First Amendment Retaliation Claims**

Of Plaintiff's seven § 1983 claims, three allege retaliation based on Plaintiff's exercise of her rights to freedom of speech and association under the First and Fourteenth Amendments to the U.S. Constitution. (Dkt. No. 1 at § 3(a)-(c)).[2] Plaintiff alleges that Defendants deprived her of her right to free speech (1) "by basing the decision to terminate Plaintiff…on Plaintiff's exercise of free speech on matters of public concern" and (2) "by basing the decision to take adverse employment actions against Plaintiff…on Plaintiff's exercise of free speech due to her political candidacy," and that Defendants deprived her of her right to freedom of association (3) "by basing the decision to take adverse actions…on Plaintiff's exercise of her right to freely associate and/or disassociate with groups, public figures, political candidates, and others." *Id.* Defendants' Motion argues that no evidence exists that Plaintiff engaged in any kind of protected speech for which she was terminated. (Dkt. No. 20). They also contend that although the First

---

[2] The First Amendment applies to States by virtue of the Fourteenth Amendment. *E.g.*, *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 334 n.8 (5th Cir. 2001) (citing cases).

Amendment protects a citizen's right to associate with others in a political party and to run for office herself, Plaintiff cannot show that she was terminated in retaliation for the exercise of her right to freedom of association because her termination occurred before she had formally applied to be a School Board candidate. *Id.* According to Defendants, Plaintiff has only "timing allegations" that Defendants terminated her employment in retaliation for her exercise of this right. *Id.*

"In order for a public employee to prevail on a First Amendment retaliation claim, she must prove that (1) she suffered an adverse employment decision; (2) she was engaged in protected activity; and (3) the requisite causal relationship between the two exists." *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008). The record is undisputed that Plaintiff suffered an adverse employment action, *i.e.*, the termination of her employment as an Assistant County Attorney. *Id.* ("[T]here is no question that termination of employment qualifies as adverse employment action."). With regard to the second prong, the record makes clear that Plaintiff's expressed intent to run for office as an independent candidate, and therefore in opposition to a member of Defendant Canales's political team, is the alleged protected activity in this case. As Defendants' Motion acknowledges, the First Amendment protects the right to run for political office. *E.g.*, *McCormick v. Edwards*, 646 F.2d 173, 175 (5th Cir. 1981) (public employee, like all citizens, "has a constitutionally protected right to actively support, work for and campaign for a partisan candidate for political office or even to run for such office himself."); (Dkt. No. 20) (citing same). Although Defendants characterize this right as associational activity, the Fifth Circuit has described it as conduct addressing matters of public concern. *See Jordan*, 516 F.3d at 297 (noting that "our case law…supports the conclusion that [the plaintiff's] run for office involved matters of public concern"). Still, the Court also recognizes that a "corollary" of the

right to freedom of association "is the right *not* to associate." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (emphasis added). Here, the record contains evidence that Plaintiff expressed to Canales her desire to run for office "for herself" and not under any slate of candidates, which signified to Canales that Plaintiff intended to oppose members of his political team. Therefore, the Court finds that this case implicates Plaintiff's constitutionally protected rights to free speech and to "disassociate" from the political group supported by her supervisor. To the extent that Defendants would claim that Plaintiff's expression of intent to file for candidacy does not enjoy the same protection as the formal candidacy itself, the Court finds no suggestion in the applicable case law that such a distinction exists. In *Jordan*, the plaintiff had made *no* explicit statement that she planned to repeat a run for office against her supervisor, but the court found that "there were signals, however subtle, that she continued to be and would be [her supervisor's] political rival." *Jordan*, 516 F.3d at 298. Here, the signals were less subtle: Plaintiff explicitly stated to Canales her desire to run for a position on the School Board, and the record at least raises a fact question as to whether Canales viewed her desire as an expression of political rivalry. Moreover, if a candidacy for office also implicating the right to disassociate is protected by the First Amendment, the Court cannot endorse a scenario in which a supervisor may circumvent these constitutional protections by firing his employee before she can make her candidacy "official." In sum, the Court finds that Plaintiff's expressed intent to file for candidacy for a position on the Rio Grande City School Board constituted protected activity under the First Amendment.[3]

---

[3] Defendants make no alternative argument that they had the requisite, weightier interest in terminating Plaintiff's employment because she planned to run for the School Board. *See* (Dkt. No. 20). Therefore, the Court need not address the application of the *Pickering-Connick* balancing test to determine whether such an interest existed. *See Jordan*, 516 F.3d at 299 (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)) ("*Pickering-Connick* balancing requires us to consider the 'balance between the interests of the

The final, "causation" prong of Plaintiff's First Amendment retaliation claims requires the Court to consider whether the record contains evidence that (1) the protected conduct was a substantial or motivating factor in Defendants' decision to terminate her employment and (2) if so, whether Defendants would have terminated her regardless of the protected conduct. *Id.* at 301 (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).  Although Defendants take the position that Plaintiff has only "timing" allegations that Canales fired her for exercising her First Amendment rights, the record contains more than Plaintiff's expressed intent to run for office and a termination of her employment shortly thereafter.  For one, Plaintiff communicated her intent to the very individual responsible for firing her, and who allegedly perceived her impending candidacy as an expression of opposition to his political group.  Further, the fact that Canales gave no reason to Plaintiff for her termination, when considered against Plaintiff's testimony that her alleged deficient work performance was neither addressed in her July 18 conversation with Canales or in her personnel file, constitutes additional evidence that her expressed desire to run for office served as a substantial or motivating factor in the decision to terminate her.  Canales's statements in a recently-filed affidavit that he was disappointed in Plaintiff's work performance, and that he would have fired her regardless of her decision to run for office, merely raise fact questions on the issue of causation.  In sum, the Court finds sufficient evidence in the record that the requisite causal relationship exists between Plaintiff's protected conduct and her termination.  Therefore, the Court must deny Defendants' request for summary judgment on Plaintiff's First Amendment retaliation claims.

**2.      Additional § 1983 Claims**

Apart from her conspiracy claim under § 1983, discussed *infra*, Plaintiff's remaining §

---

[employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees.'").

9 / 15

1983 claims are that Defendants deprived her of (1) her right to free speech and due process under the First and Fourteenth Amendments "by refusing to provide Plaintiff with an opportunity to speak freely and completely on matters of public concern in accordance with applicable policies and procedures"; (2) her First and Fourteenth Amendment rights "by not providing her with legal process to support her work performance"; and (3) her "right pursuant to the employer's written policies and procedures." (Dkt. No. 1 at § 3(d), (f), (g)). To the extent that the initial claim represents an attempt to assert First Amendment violations apart from Defendants' alleged retaliatory termination of Plaintiff's employment, summary judgment is appropriate because Plaintiff admits that Defendants did not prohibit her from making any speech or from running for office. (Dkt. No. 20-3, Ex. A at pp. 66-67). This claim also references the due process clause of the Fourteenth Amendment, which "has been viewed as guaranteeing procedural due process and substantive due process." *E.g.*, *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000). The clause's procedural component requires the government to follow appropriate procedures when depriving any person of life, liberty, or property, whereas the substantive component bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Id.*; *see also Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). A plaintiff making either claim must show that she has been deprived of a constitutionally protected life, liberty or property interest. *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

Plaintiff appears to allege that Defendants deprived her of due process, *i.e.*, "legal process to support her work performance," *i.e.*, her "right pursuant to the employer's written policies and procedures," by failing to give her a non-"pretextual" reason for her termination. *See* (Dkt. No. 20-3, Ex. A at pp. 73-78; Dkt. No. 24 at pp. 9-10). However, the Defendant County's Personnel

Policy Manual constitutes unrefuted evidence that Plaintiff was an at-will employee who could be fired "for any legal reason, *or no reason*, at any time either with or without notice." (Dkt. No. 20-4, Ex. B at 1.01) (emphasis added).[4] Therefore, Defendants did not violate the County's policies or procedures by giving no reason for Plaintiff's termination. Moreover, Plaintiff's at-will status negates a showing that she had the requisite property interest in her job, and she has made no allegation of a liberty interest supporting her due process claims. *See Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 439 (5th Cir. 2001) (at-will employee has only unilateral expectation of continued employment and therefore no protected property interest); (Dkt. Nos. 1, 24). Therefore, the Court must enter summary judgment on Plaintiff's remaining § 1983 claims, but notes that Defendants' alleged failure to give a *constitutional* reason for Plaintiff's termination could be characterized as a restatement of, and can be pursued through, Plaintiff's claims that her termination constituted retaliation for the exercise of her First Amendment rights.

### 3.    Municipal Liability

With respect to Plaintiff's § 1983 claims that survive summary judgment, the Court must address Defendants' alternative argument that Plaintiff cannot meet the "official policy" requirement of her claims against the Defendant County. (Dkt. No. 20). A municipality or local governmental entity, such as the County, may be held liable under § 1983 only for acts for which it is actually responsible and not solely because it employs a tortfeasor. *E.g.*, *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Thus, to establish municipal liability under § 1983, a plaintiff must

---

[4] Plaintiff attempts to contest her at-will status by arguing that an express obligation to discharge for good cause only, or an employer's policy or rule that is not consistently enforced, can constitute a contract modifying a plaintiff's at-will status. (Dkt. No. 24 at p. 10). This argument is unavailing in the present case, as Defendants' option to fire Plaintiff for any legal reason *or* no reason does not constitute an express obligation to discharge for good cause only. Further, Plaintiff provides no evidence that the inconsistent enforcement of a policy or rule operated to alter her at-will status.

identify "'(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom.'" *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotations omitted). Defendants point out that although Plaintiff testified that it is the "customary practice" of Canales and his group to retaliate against people who go against them, she could not identify anyone else who had been retaliated against or fired. (Dkt. No. 20-3, Ex. A at pp. 70-72). Plaintiff's own subjective belief that Canales and his group have such a custom cannot defeat summary judgment, particularly where Plaintiff has made no showing that an official policymaker had the requisite knowledge that such a custom existed. Notably, Plaintiff's response does not even address Defendants' argument regarding municipal liability. *See* (Dkt. No. 24). Therefore, the Court finds that Plaintiff has failed to produce evidence of an essential element of her § 1983 claims against the County, and that summary judgment must be granted on those claims. As Plaintiff's § 1983 claims against Canales in his official capacity are, in essence, claims against the County, this finding is also dispositive of Plaintiff's official capacity claims. *See*, *e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008).

**B.     Texas Constitutional Claims**

Plaintiff asserts causes of action under the Texas Constitution on the following three bases: (1) Defendants deprived Plaintiff of her right to free speech under Article I, § 8 of the Texas Constitution "by basing their employment decisions…on Plaintiff['s] exercise of free speech on matters of public concern, political candidacy, political supports of candidates, and political associations"; (2) Defendants deprived Plaintiff of her right to freedom of association under Article I, § 8 "by basing their employment decisions…on Plaintiff's exercise of her right

to freely associate and/or disassociate with groups, public figures, political candidates, and others"; and (3) Defendants deprived Plaintiff of her rights to free speech and due process under Article I, § 19 "by refusing to provide Plaintiff with an opportunity to speak freely and completely on matters of public concern in accordance with applicable policies and procedures." (Dkt. No. 1 at § 4). As Defendants note, Texas has no equivalent to § 1983, and the Texas Supreme Court has found no implied private right of action for damages against governmental entities for violations of the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147-49 (Tex. 1995); *accord City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007). Still, "suits for equitable remedies for violation of constitutional rights are not prohibited." *Bouillion*, 896 S.W.2d 142, 149 (Tex. 1995); *see also City of Elsa*, 226 S.W.3d at 392. Defendants argue that Plaintiff seeks only monetary damages, and therefore move for summary judgment, whereas Plaintiff responds that she seeks only equitable relief to redress Defendants' alleged state constitutional violations. (Dkt. Nos. 20, 24). As Plaintiff requests equitable relief in the section of her pleading setting forth her claims under the Texas Constitution, the Court will not enter summary judgment on the grounds raised in Defendants' Motion. *See* (Dkt. No. 1 at § 4).

**C.**   **Conspiracy Claims**

Finally, the Court turns to Plaintiff's claim brought pursuant to § 1983 that "Defendants conspired with others to deprive Plaintiff of her rights under the First and Fourteenth Amendments," and to her claim under § 1985(3) that Defendants conspired to deprive of her of her "civil and constitutional rights and privileges under the equal protection of the laws by taking actions in furtherance of their attempts to deprive and infringe upon Plaintiff's individual and respective rights to free speech, freedom of association, and right to privacy." (Dkt. No. 1 at §§ 3(e), 5). Plaintiff's response appears to abandon her § 1985(3) theory of recovery and instead

characterizes her conspiracy claim as brought pursuant to § 1983. *See* (Dkt. No. 24). However, the case law she cites does not identify § 1983 as the means through which a plaintiff may assert a conspiracy claim; rather, it addresses the significance of a private actor's conspiracy with a public actor in determining whether that private party acts under color of state law for purposes of § 1983. (Dkt. No. 24); *see Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126-27 (10th Cir. 2000); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).[5] Section 1985(3) does constitute a vehicle through which to claim conspiracy, but even assuming that Plaintiff has not abandoned her claim under this section, the Court agrees with Defendants that the record lacks evidence to support this claim. *See* (Dkt. No. 20). Under § 1985(3), a plaintiff must show (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). Defendants correctly argue that no conspiracy can exist between the Defendant County and County Attorney Canales (or any other County employee) because a governmental entity and its employee constitute a "single legal entity which is incapable of conspiring with itself for purposes of § 1985(3)." *Hilliard*, 30 F.3d at 653. Plaintiff testified that she assumed that Canales conspired with other members of his team on the School Board to fire her for expressing her intent to run for a Board position, basing this assumption on Canales's statements to her that "the group was in a panic." (Dkt. No. 20-3, Ex. A at pp. 68-70). The Court declines to find that this testimony alone constitutes evidence that would place the initial element of a § 1985(3) claim in genuine dispute. Moreover, even if it did, the Court cannot ignore that the requirement

---

[5] Defendants' Motion does not dispute that Canales was acting under color of state law for purposes of Plaintiff's § 1983 claims. *See* (Dkt. No. 20).

of "'intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or…class-based, invidiously discriminatory animus behind the conspirator[s'] action.'" *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) (emphasis added in *Bryant*). Plaintiff's pleading, her response, and the summary judgment evidence fail to identify the requisite "class-based" animus. For these reasons, the Court must enter summary judgment on Plaintiff's conspiracy claims.

## V.     Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part as follows:

The Motion is **GRANTED** with respect to Plaintiff's due process-based § 1983 claims set forth in § 3(d), (f), and (g) of her pleading and Plaintiff's conspiracy claims, whether brought pursuant to § 1983 or § 1985(3);

The Motion is **GRANTED** with respect to all of Plaintiff's § 1983 claims against the Defendant County and Defendant Canales in his official capacity; and

The Motion is **DENIED** with respect to Plaintiff's § 1983 First Amendment retaliation claims against Defendant Canales in his individual capacity and Plaintiff's claims against both Defendants for equitable relief under the Texas Constitution.

SO ORDERED this 8th day of August, 2013, at McAllen, Texas.

_____
Randy Crane
United States District Judge