UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| HILDA GONZALEZ GARZA, § § Plaintiff, § VS. § STARR COUNTY, TEXAS, *et al*, § § Defendants. § | § § § CIVIL ACTION NO. 7:12-CV-274 § § § |

## ORDER PROVISIONALLY GRANTING DEFENDANTS' MOTION FOR REINSTATEMENT

**I.     Factual and Procedural Background**

Now before the Court is the "Motion for Reinstatement of Plaintiff" filed by Defendants Starr County, Texas ("the County") and Victor Canales, Jr. ("Canales"). (Dkt. No. 50).[1] On August 17, 2012, Plaintiff Hilda Gonzalez Garza filed this suit against the County and County Attorney Canales in his individual and official capacities, claiming that Defendants' termination of Plaintiff's employment as an Assistant County Attorney, violated her rights under the U.S. and Texas Constitutions. (Dkt. No. 1). Plaintiff alleged that she spoke with Canales on July 18, 2012 about her interest in running for a position on the Rio Grande City School Board. *Id.* Canales warned her that she would be running against members of his political "grupo," or team, and asked her to "think about it." *Id.* at § 2. On July 20, Plaintiff visited "local county elected officials" to advise them that she would be running for the School Board, and to seek their support. *Id.* That afternoon, Plaintiff received a letter that her employment had been terminated. *Id.* Plaintiff brought various causes of action against both Defendants under 42 U.S.C. § 1983 and the Texas Constitution, alleging that Defendants terminated her employment in retaliation

---

[1] Also pending, and taken under advisement, are Plaintiff's "Motion for Entry of Judgment with Costs and Attorneys' Fees" (Dkt. No. 59), Defendants' "Motion for Remittitur" (Dkt. No. 64), and Defendants' "Proposed Final Judgment" docketed as a Motion (Dkt. No. 66).

for Plaintiff's exercise of her federal and state constitutional rights to freedom of speech and association, and in violation of her right to due process. *Id.* at §§ 3, 4. Plaintiff also claimed, pursuant to 42 U.S.C. §§ 1983 and 1985(3), that Defendants conspired with others to violate her federal constitutional rights. *Id.* at §§ 3, 5.

On August 8, 2013, the Court granted Defendants' Motion for Summary Judgment on all § 1983 claims asserted against the County and Canales in his official capacity, and on Plaintiff's due process and conspiracy claims. (Dkt. No. 26). With respect to Plaintiff's remaining claims, the Court found that the summary judgment evidence placed in genuine dispute whether Canales retaliated against Plaintiff in violation of her rights to seek public office and to "disassociate" from Canales's political group, as protected by the First Amendment to the U.S. Constitution. *Id.* The Court therefore denied Defendants' request for summary judgment on Plaintiff's § 1983 First Amendment retaliation claim against Canales in his individual capacity. *Id.* The Court also refrained from entering summary judgment on Plaintiff's request for equitable relief from both Defendants to redress the alleged violations of the Texas Constitution. *Id.*[2]

Beginning on September 23, 2013, the Court held a two-day jury trial on Plaintiff's remaining claims. In its verdict rendered on September 24, the jury found by a preponderance of the evidence: (1) that Plaintiff's First Amendment rights to seek public office and/or to disassociate from political groups were a substantial or motivating factor in Canales's decision to discharge Plaintiff from her employment; (2) that Canales would not have dismissed Plaintiff for other reasons even had she not exercised those rights; and (3) that the following sums would fairly and reasonably compensate Plaintiff for Canales's violation of her rights: $68,400.61 in

---

[2] The Court recognized, as Defendants' Motion argued and Plaintiff conceded, that no private right of action for damages exists for violations of the Texas Constitution. (Dkt. No. 26). However, as suits for equitable remedies are not prohibited, and the section of Plaintiff's pleading setting forth her state constitutional claims requested such relief, the Court could not enter summary judgment on those claims on the grounds raised in Defendants' Motion. *Id.*

"earnings, including benefits, that the plaintiff has lost in the past" and $1,431,600.00 in "earnings, including benefits, that the plaintiff is reasonably certain to lose in the future." (Dkt. No. 36 at p. 8).[3]

Defendants now move for Plaintiff's reinstatement to the position of Assistant County Attorney in lieu of the jury's "front pay" award. (Dkt. No. 50). Upon consideration of the Motion, Plaintiff's response and attached affidavit (Dkt. No. 54), and the arguments of counsel and evidence presented at the November 15, 2013 evidentiary hearing on the Motion, the Court finds that the Motion must be granted for the following reasons.

## II.   Defendants' Motion for Reinstatement of Plaintiff

### A.   Overview of Applicable Law

Section 1983, under which Plaintiff's First Amendment retaliation claim is brought, provides that any person acting under color of state law who deprives another of her rights under the U.S. Constitution "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.[4] Fifth Circuit precedent directs that both reinstatement and front pay are considered equitable remedies under § 1983, and that the district court must determine in its discretion whether an employee who has suffered a retaliatory

---

[3] As Plaintiff's state constitutional claims were predicated on the same factual bases as her First Amendment claim, and she made no argument that the protections afforded by Article I, § 8 of the Texas Constitution were greater than those afforded by its federal counterpart in this case, the Court did not ask the jury to separately determine whether a state constitutional violation had occurred. *See Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 105-06 (Tex. 2003) (unless plaintiff articulates reasons based on text, history, and purpose of Article I, § 8 to show that it affords more protection than First Amendment under circumstances presented, protections considered same under both Constitutions); *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 563 n.4 (5th Cir. 2003) (in absence of argument by plaintiff that Texas Constitution afforded broader protection, applying First Amendment analysis to claim that defendants retaliated against plaintiff for exercise of her rights to free speech and association under U.S. and Texas Constitutions).

[4] No statutory equivalent exists for violations of the Texas Constitution, but the State's highest court has interpreted its Bill of Rights as "self-executing to the extent that anything done in violation of it is void." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-49 (Tex. 1995). Thus, a violation of Article I, § 8 of the Texas Constitution may be remedied through equitable relief concomitant with the voiding of the unconstitutional action. *See id.* at 149.

discharge can be reinstated or is entitled to front pay. *See Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822, 823-24 (5th Cir. 1990). As Defendants' Motion points out, reinstatement is the "preferred" remedy: "[t]he most obvious way to make a plaintiff whole is to award back pay denied by termination and then reinstate the plaintiff, thereby negating the effect of the unlawful termination." *Id.* at 822; *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 382 (5th Cir. 1988); *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991). Where reinstatement is not "feasible," "front pay may make the plaintiff whole by providing the wages that the plaintiff would have received, less any income derived from other employment…." *Deloach*, 897 F.2d at 822; *Johnson*, 853 F.2d at 382; *Reneau*, 945 F.2d at 870.[5]

Courts may consider a variety of factors when evaluating the "feasibility" of reinstatement, including whether the employer has any existing vacancies, whether reinstatement would displace another employee, and whether the plaintiff has secured substantially similar employment. *See Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254 (5th Cir. 1995). In First Amendment retaliation cases such as this, courts must consider these factors against the general rule that reinstatement is "an integral part of the remedy for a discharge which contravenes the first amendment." *Bueno v. City of Donna*, 714 F.2d 484, 495-96 (5th Cir. 1983) (internal quotations and citation omitted). "Courts generally order reinstatement because they reasonably assume that in most cases the defendant would have continued to employ the plaintiff indefinitely if the plaintiff had not engaged in the objectionable but constitutionally protected conduct that led to [her] dismissal." *Prof'l Ass'n of Coll. Educators v. El Paso Cmty. Coll. Dist.*, 730 F.2d 258, 268 (5th Cir. 1984). That reinstatement might "revive old antagonisms," have "disturbing consequences," or "breed difficult working conditions" usually is not enough "to outweigh the important first amendment policies that reinstatement serves." *Id.*

---

[5] The amount of front pay determined by a jury in a retaliatory discharge case is advisory, and therefore the district court is not bound by it. *See Deloach*, 897 F.2d at 824; *Reneau*, 945 F.2d at 870-71.

at 269 (internal quotations and citations omitted).[6]  At some point, "the probable adverse consequences of reinstatement can weigh so heavily that they counsel the court against imposing this preferred remedy."  *Id.*  The court should deny reinstatement "only in exceptional circumstances."  *Id.*

**B.     Parties' Arguments and Evidence**

Plaintiff sought "reinstatement and front pay" in the damages section of her pleading, but now it is Defendants who are requesting Plaintiff's reinstatement and Plaintiff who is resisting it.  *See* (Dkt. No. 1 at § 7).  Defendants first moved for reinstatement on October 4, 2013, and filed the more detailed, amended Motion now before the Court on October 25, 2013.  (Dkt. Nos. 40, 50).  Defendants support their Motion by pointing to trial testimony that Plaintiff was terminated because her handling of the Child Protective Services ("CPS") cases to which she was primarily assigned "was not up to par."  (Dkt. No. 50).  The testimony did not uncover complaints with "any other aspect of work she did in the County Attorney's office, *i.e.*, criminal dockets and/or cases, or in handling Commissioner's Court in the absence of the County Attorney."  *Id.*  Defendants' Motion therefore requests Plaintiff's reinstatement subject to the following terms:

---

[6]  In a case cited by the Fifth Circuit in *Prof'l Ass'n of Coll. Educators*, 730 F.2d at 269, the Eleventh Circuit shed additional light on the "policies" behind reinstatement in a First Amendment retaliation case:

> When a person loses his job, it is at best disingenuous to say that money damages can suffice to make that person whole. The psychological benefits of work are intangible, yet they are real and cannot be ignored. Yet at the same time, there is a high probability that reinstatement will engender personal friction of one sort or another in almost every case in which a public employee is discharged for a constitutionally infirm reason. Unless we are willing to withhold full relief from all or most successful plaintiffs in discharge cases, and we are not, we cannot allow actual or expected ill-feeling alone to justify nonreinstatement. We also note that reinstatement is an effective deterrent in preventing employer retaliation against employees who exercise their constitutional rights. If an employer's best efforts to remove an employee for unconstitutional reasons are presumptively unlikely to succeed, there is, of course, less incentive to use employment decisions to chill the exercise of constitutional rights.

*Allen v. Autauga Cnty. Bd. of Educ.*, 685 F.2d 1302, 1306 (11th Cir. 1982).

> This is an offer of unconditional reinstatement and is for a position of Assistant County Attorney at a yearly salary of $55,000.00, with benefits as provided by the County to all employees. [Plaintiff's] responsibilities would include acting as First Chair in most jury and bench trials in the criminal cases handled by the County Attorney's office; prosecuting Protective Orders, bond forfeitures, asset forfeitures and mental commitments; as well as occasionally handling the criminal docket upon the absence of the other Assistant County Attorney. She would be provided an office in the Starr County Attorney's office. She would be supervised by Assistant County Attorney Julian Castaneda. She would be expected to keep regular business hours, just as is expected of Mr. Castaneda. She would be allowed to continue her private practice, as long as it did not conflict with her duties as a representative of the State of Texas as a prosecutor, or interfere with her ability to perform her duties as Assistant County Attorney, as is expected of any Assistant County Attorney. Plaintiff would still be an at-will employee and expected to conduct herself in the same manner that is expected of all Starr County employees.

*Id.*

Plaintiff's response admits that "[i]t was not until July of 2012 that Plaintiff experienced hostility and antagonism in the workplace by Starr County Attorney Canales." (Dkt. No. 54). The Court recognizes that the litigation arising from the July 2012 termination of Plaintiff's employment by Canales has engendered further "hostility and antagonism": to demonstrate to the jury that Canales did not retaliate against Plaintiff for unconstitutional reasons, Defendants presented testimony regarding Canales's dissatisfaction with Plaintiff's workplace attire and performance, and outside of court Canales's stated opinions concerning the lawsuit have apparently created additional friction. *See id.* Further, and perhaps most significantly, the jury awarded back pay for which Canales is personally liable. Still, Defendants' offer of reinstatement includes provisions to insulate Plaintiff from Canales's direct supervision, and the Court finds that the existing antagonism is not so uncommon to a First Amendment retaliation case that it would counsel the Court against granting the preferred remedy of reinstatement.

Plaintiff also objects to reinstatement on the grounds that Defendants presented no evidence at trial of an available position to which Plaintiff could be reinstated, but the Court is not limited to trial evidence in fashioning this equitable remedy. *Id.*; *see Prof'l Ass'n of Coll.*

*Educators*, 730 F.2d at 269 (district court may take new evidence to determine whether reinstatement is appropriate remedy). Upon consideration of the evidence presented at the hearing on November 15, 2013, the Court is satisfied that an available position exists, would not displace another employee, and is substantially similar in duties and pay to the position Plaintiff held prior to her unconstitutional termination. Plaintiff held her former position while maintaining the private practice that currently supports her, and the offer of reinstatement would allow her to continue that practice to the extent possible.

Plaintiff's final objection that she cannot be reinstated because she plans to run for public office again is without merit; if longstanding precedent did not put Defendants on notice before, the jury's verdict has now made them aware that they cannot terminate Plaintiff for seeking public office without running afoul of the First Amendment. *See* (Dkt. No. 54).

### III. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendants' Motion for Reinstatement is provisionally **GRANTED**. Accordingly, the Court hereby **ORDERS** that effective April 21, 2014, Plaintiff shall be reinstated to the position of Assistant County Attorney under the terms offered in Defendants' Motion.

SO ORDERED this 25th day of February, 2014, at McAllen, Texas.

_____
Randy Crane
United States District Judge